# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### EASTERN DIVISION

| | |
|---|---|
| THE PRUDENTIAL INSURANCE COMPANY OF AMERICA, | |
| Plaintiff, | No. 19-CV-2015-CJW-KEM |
| vs. | **MEMORANDUM OPINION AND ORDER** |
| FREDRICK WILLIAMS, PEGGY J. OWENS, and FREDERICK BURNSIDE, | |
| Defendants. | |

This matter is before the Court on plaintiff's Unopposed Motion for Default Judgment and other Interpleader Relief. (Doc. 13). Defendant Peggy J. Owens does not oppose plaintiff's motion. (Docs. 13, at 1; 13-7, at 1). Defendants Fredrick Williams ("Williams") and Frederick Burnside ("Burnside") have not resisted plaintiff's motion. For the reasons set forth below, plaintiff's motion is **granted in part**, **denied in part**, and **held in abeyance in part**.

## I.     PROCEDURAL HISTORY

Plaintiff filed this interpleader action on March 5, 2019. (Doc. 1). Plaintiff served Burnside and Owens on March 15, 2019, (Docs. 3; 4) and Williams on March 18, 2019, (Doc. 6). To date, only Owens has filed an answer. (Doc. 8). Owens' answer does not assert a cross-claim against the other defendants, or otherwise assert a claim to the funds at issue. (*Id.*). On May 10, 2019, plaintiff filed its Motion for Clerk's Entry of Default Judgment against Williams and Burnside. (Doc. 11). The Clerk of Court found Williams and Burnside in default. (Doc. 12). Plaintiff then filed the instant motion for entry of default judgment. (Doc. 13). Owens does not resist plaintiff's motion (Docs. 13, at 1;

13-7, at 1), and Williams and Burnside did not file resistances. On July 24, 2019, plaintiff filed a motion for leave to amend to correct the spelling of Williams' first name. (Doc. 18.) The Court granted the motion (Doc. 19) and plaintiff's amended complaint was deemed filed on July 25, 2019.

## II. Factual Background

In determining the relevant facts, the Court will consider the allegations in the First Amended Complaint in Interpleader ("complaint") and portions of the affidavits and exhibits attached to plaintiff's motion for default. "An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied." FED. R. CIV. P. 8(b)(6). Williams and Burnside have not answered plaintiff's complaint, and thus have not denied any of the allegations in the complaint. Plaintiff's complaint does not seek damages from defendants, so the Court will assume the truth of the allegations in the complaint for purposes of ruling on plaintiff's motion for default.[1] The Court will also consider plaintiff's affidavits and exhibits to the extent that the information within the affidavits is within the affiant's personal knowledge and not hearsay, and to the extent the exhibits are accompanied by sworn statements laying proper foundation. *See, e.g.*, *Weinreich v. Lamson*, 23 F. App'x 597, 598 (8th Cir. 2001) (finding the district court did not commit plain error by relying on the plaintiffs' affidavits when they "were grounded in personal knowledge and sufficient to support the district court's finding the summons was served."); *Oceanic Trading Corp. v. Vessel Diana*, 423 F.2d 1, 4 (2d Cir. 1970) ("Unless there are very unusual circumstances to justify it, the evidentiary material offered in support of a final judgment should consist of material within the personal knowledge of the affiant and not

---

[1] Owens filed an answer, and either admitted or denied for lack of information the allegations in the complaint. (Doc. 8). Given that Owens does not resist plaintiff's motion, the Court will likewise assume the truth of the allegations in the complaint in relation to Owens.

2

hearsay, and attached exhibits should be accompanied by sworn statements of the circumstances that would qualify them as full exhibits.").

Plaintiff is an insurance company that issued group life insurance policies to the W.W. Grainger Inc. Group Benefit Trust (the "Trust"). (Doc. 20, at 1-2). Lakisha Williams (the "Insured") was an eligible employee under the Trust. (*Id.*, at 2). Plaintiff issued the Trust group life insurance policy G-45880 which provided basic term life coverage ("Basic Coverage") and accidental death and dismemberment coverage ("AD&D Coverage"), and policy G-48380 which provided optional term life coverage ("Optional Coverage") (collectively, the "Plans"). (Doc. 14-1, at 1-2). The Plans are employee welfare benefit plans, governed by the Employee Retirement Income Security Act of 1974 ("ERISA"). (Doc. 20, at 2). The Insured was enrolled in the Plans, and designated Owens as the sole primary beneficiary of the Basic Coverage and Williams as the sole primary beneficiary of the Optional Coverage and AD&D Coverage. (*Id.*, at 3).

The Insured died on January 26, 2018. (*Id.*). The Insured's death was ruled a homicide by the Iowa Office of State Medical Examiner. (Doc. 13-5). Williams was a person of interest in the Insured's death. (Doc. 20, at 3). On February 13, 2019, the State of Iowa charged Williams with Murder in the First Degree of the Insured. *State v. Williams*, Black Hawk County Case No. FECR 229282, Criminal Complaint (Feb. 13, 2019).[2] Williams pleaded not guilty to the Insured's murder and is currently awaiting

---

[2] Plaintiff's submissions include a news article stating that Williams was charged with killing the insured (Doc. 13-6), as well as a record indicating that Williams is being held in the Black Hawk County Jail on charges of Murder in the First Degree and Abuse of a Corpse (Doc. 13-7). The news article is hearsay because it is a statement of the author, not the affiant, made outside the presence of the Court, and offered for the truth of the matter asserted (i.e. that Williams is charged of the Insured's murder). FED. R. EVID. 801(c). Plaintiff has not provided any foundation for any hearsay exception, so the Court will not consider the article as part of the factual record. The document from the Black Hawk County Jail, even if it qualifies as a public record under Federal Rule of Evidence 803(8), does not establish that the Insured is the alleged

trial. *Id.*, Written Arraignment and Plea of Not Guilty to Trial Information (Mar. 10, 2019); Pretrial Conference Order (May 9, 2019). Plaintiff paid Owens the death benefit for the Basic Coverage under the Plans. (Docs. 14-1, at 2; 20, at 3). If it is determined that Williams intentionally and unjustifiably caused or procured the Insured's death, then under Iowa's "slayer statute" Williams is not entitled to the death benefits for the Optional Coverage or AD&D Coverage (the "Remaining Death Benefits"). (Doc. 20, at 4 (citing IOWA CODE § 633.535)). Under the slayer statute, Williams will be treated as though he predeceased the Insured for purposes of determining the recipients of Remaining Death Benefits. (*Id.*).

> The Plans provide as follows:
>
> Any amount of insurance under a Coverage for which there is no Beneficiary at your death will be payable to the first of the following: your (a) surviving spouse or Civil Union Partner; (b) surviving child(ren) in equal shares; (c) surviving parents in equal shares; (d) surviving siblings in equal shares; (e) estate.

(*Id.*; *see also* Doc. 20, at 31). The Insured had no living children at the time of her death. (*Id.*, at 4; Doc. 8, at 2). Under the terms of the policies, if Williams cannot receive the Remaining Death Benefits, then Owens, the insured's mother, and Burnside, the Insured's father, will be the beneficiaries of the Remaining Death Benefits. (Doc. 20, at 4). The Optional Coverage has a death benefit of $28,000.00, and the AD&D Coverage has a death benefit of $41,528.00. (Doc. 14-1, at 2).

Plaintiff seeks to deposit the Remaining Death Benefits, $69,528.00, plus applicable interest, into the Court Registry Investment System ("CRIS") and requests that the Court discharge plaintiff from any further liability to defendants under the Plans after depositing the funds. (Docs. 13, 20). Plaintiff also seeks an order enjoining defendants

---

victim, and thus is not relevant to the Court's analysis. The Court will, however, take judicial notice of the pleadings in the criminal case against Williams. FED. R. EVID. 201.

from bringing any claim or proceeding against plaintiff for the Remaining Death Benefits and requiring defendants to litigate their claims to the Remaining Death Benefits. (*Id.*). Plaintiff also requests its attorneys' fees and costs, in their entirety. (Doc. 20).

### III. ANALYSIS

#### A. Applicable Law

##### 1. Default Judgment Standard

Federal Rule of Civil Procedure 55 governs default judgments:

> By its terms, the Rule requires two steps before entry of a default judgment: first, pursuant to [Rule] 55(a), the party seeking a default judgment must have the clerk enter the default by submitting the required proof that the opposing party has failed to plead or otherwise defend; second, pursuant to [Rule] 55(b), the moving party may seek entry of judgment on the default under either subdivision (b)(1) or (b)(2) of the rule.

*Dahl v. Kanawha Inv. Holding Co.*, 161 F.R.D. 673, 683 (N.D. Iowa 1995). "[I]t is of course appropriate for a district court to enter a default judgment when a party fails to appropriately respond in a timely manner." *Marshall v. Baggett*, 616 F.3d 849, 852 (8th Cir. 2010). The clerk can enter a judgment on a default when a plaintiff seeks a sum certain, but in all other cases the court must enter the judgment. FED. R. CIV. P. 55(b). Plaintiff has already obtained a default from the Clerk of Court against Williams and Burnside for failing to plead, answer, or otherwise respond to the complaint. (Docs. 11, 12). Here, plaintiff's complaint does not seek a sum certain (*see* Doc. 20, at 5-6), thus the Court must enter the default judgment. FED. R. CIV. P. 55(b).

> Upon default, the factual allegations of a complaint (except those relating to the amount of damages) are taken as true, but "it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law."

5

*Murray v. Lene*, 595 F.3d 868, 871 (8th Cir. 2010) (quoting 10A Charles Alan Wright, Arthur R. Miller & Mary K. Kane, FEDERAL PRACTICE AND PROCEDURE, § 2699 (3d ed. 1998)). As noted above, the Court will consider the uncontroverted allegations in the complaint (since none of the allegations relate to the amount of damages) as well as affidavits based on personal knowledge and documents accompanied by affidavits setting forth the foundation for the admission of such documents. The Court notes that Owens is not in default but does not oppose plaintiff's motion. The Court will assess the pleadings and factual record in relation to all three defendants to ensure that there is a legal basis for granting plaintiff's requested relief against the defendants.

### B. *Jurisdiction*

"Federal courts are courts of limited jurisdiction. The requirement that jurisdiction be established as a threshold matter springs from the nature and limits of the judicial power of the United States and is inflexible and without exception." *Godfrey v. Pulitzer Pub. Co.*, 161 F.3d 1137, 1141 (8th Cir. 1998) (alterations, internal citations and quotation marks omitted). "The validity of an order of a federal court depends upon that court's having jurisdiction over both the subject matter and the parties." *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 701 (1982) (citations omitted). The plaintiff has the burden to establish that the Court has jurisdiction. *See Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1072 (8th Cir. 2004) ("[A] plaintiff 'must state sufficient facts in the complaint to support a reasonable inference that [the defendants] can be subjected to jurisdiction within the state." (quoting *Block Indus. v. DHJ Indus., Inc.*, 495 F.2d 256, 259 (8th Cir.1974) (alteration in original))); *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987) ("[F]ederal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint."). So, before entering judgment on a default, the Court must determine if the record before

it establishes personal jurisdiction over each defendant and subject matter jurisdiction over plaintiff's claim.

### 1. *Personal Jurisdiction*

Plaintiff's complaint does not directly address personal jurisdiction. (Doc. 20). Plaintiff appears to be asserting general jurisdiction over defendants. (*Id.*, at 1-2). "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile . . . ." *Bristol-Myers Squibb Co. v. Superior Court of Cal., San Francisco Cty.*, 137 S. Ct. 1773, 1780 (2017) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 918 (2011)). "For purposes of federal jurisdiction, 'domicile' and 'citizenship' are synonymous terms. . . ." *Ellis v. Southeast Const. Co.*, 260 F.2d 280, 281 (8th Cir. 1958) (alterations omitted). Plaintiff alleges that defendants are citizens of Iowa. (Doc. 20, at 1). Accepting these allegations as true, defendants are also domiciled in Iowa. *Ellis*, 260 F.2d at 281. Thus, the Court has personal jurisdiction over defendants.

### 2. *Subject Matter Jurisdiction*

A party may bring an interpleader claim under Title 28, United States Code, Section 1335 ("statutory interpleader"), or under Federal Rule of Civil Procedure 22 ("rule interpleader"). *Acuity v. Rex, LLC*, 296 F. Supp. 3d 1105, 1107 (E.D. Mo. 2017). The same general principles apply to both statutory and rule interpleader. *Id.* Rule interpleader cases, however, require an independent basis for subject matter jurisdiction, such as diversity or federal question jurisdiction. *Blackmon Auctions, Inc. v. Van Buren Truck Ctr., Inc.*, 901 F. Supp. 287, 289 (W.D. Ark. 1995). Plaintiff asserts a rule interpleader claim. (Doc. 13, at 1). Plaintiff alleges that the Court has federal question jurisdiction under ERISA Section 1132. (Doc. 20, at 2 (citing 29 U.S.C. 1132 (a), (e)). Section 1132 provides federal district courts with subject matter jurisdiction over interpleader claims to determine the proper recipient of benefits under an ERISA plan.

*See United States v. Taylor*, 338 F.3d 947, 950 (8th Cir. 2003) (holding that the district court had jurisdiction over former employer's interpleader action to determine ownership of former employee's ERISA plan proceeds); *see also Merchants Tr. Co. v. Batchelder*, 957 F. Supp. 532, 534 (D. Vt. 1997) ("A fiduciary may bring an interpleader action in district court pursuant to 29 U.S.C. § 1132(a)(3)(B) for a declaration as to which claimant is entitled to receive benefits from a plan covered by ERISA."). Plaintiff is a fiduciary as defined under ERISA, and the Plans are governed by ERISA. (Doc. 20, at 2). Thus, the Court finds that it has federal question subject matter jurisdiction over plaintiff's rule interpleader claim.

### C. *Interpleader*

#### 1. *Plaintiff's Claim for Interpleader*

The Court, having found that it has jurisdiction over the parties and the subject matter, must determine whether the record sets forth sufficient facts to support interpleader relief.

> Interpleader is a procedural device whereby a party holding money or property concededly belonging to another may join in a single suit two or more parties asserting mutually exclusive claims to the fund. The stakeholder is thereby freed from the threat of multiple liability and/or the vexation of multiple lawsuits.

*Hearing v. Minnesota Life Ins. Co.*, 33 F. Supp. 3d 1035, 1039 (N.D. Iowa 2014) (quoting *Gaines v. Sunray Oil Co.,* 539 F.2d 1136, 1141 (8th Cir.1976)), *aff'd*, 793 F.3d 888 (8th Cir. 2015). In determining whether there are competing claims to the money in controversy, the Court considers potential claims as well as claims that have been asserted at the time suit is filed. *Dakota Livestock Co. v. Keim*, 552 F.2d 1302, 1308 (8th Cir. 1977). The competing claims need only "meet 'a minimal threshold of substantiality,' meaning the actual or potential adverse claim 'must be at least colorable.'" *Hearing*, 33

8

F. Supp. 3d at 1041 (quoting *Michelman v. Lincoln Nat'l Life Ins. Co.*, 685 F.3d 887, 895 (9th Cir.2012)).

The record before the Court establishes that plaintiff has properly invoked interpleader. Plaintiff is holding money, the Remaining Death Benefits, that it makes no claim to and concedes belongs to someone else. (Docs. 14-1, at 2; 20, at 5). Defendants Williams, and Burnside and Owens have competing and mutually exclusive claims to the Remaining Death Benefits. Williams in the named beneficiary of the Remaining Death Benefits. (Docs. 13-4; 14-1, at 2). Although Williams has not yet asserted his claim (Doc. 20, at 3), he still has a colorable claim to the Remaining Death Benefits.

Williams, however, is charged with the Insured's murder. *Williams*, Case No. FECR 229282, Criminal Complaint. Under Iowa's slayer statute, "[a] person who intentionally and unjustifiably causes or procures the death of another shall not receive any property, benefit, or other interest by reason of the death." IOWA CODE § 633.535. "A person convicted of murder or voluntary manslaughter of the decedent is conclusively presumed to have intentionally and unjustifiably caused the death for purposes of [the slayer statute]." *Id.* at § 633.536. If Williams is convicted, and thus barred from receiving the Remaining Death Benefits, then Owens and Burnside are each entitled to fifty percent of the Remaining Death Benefits. (Docs. 13-3, at 25, 60; 20, at 4). Williams' claim under the beneficiary designation, and Owens and Burnside's claims under the slayer statute, thus, represent colorable competing claims to the Remaining Death Benefits.

Given these competing claims, plaintiff's payment of the Remaining Death Benefits to either Williams, or alternatively to Owens and Burnside, could subject plaintiff to the threat of multiple liability. If plaintiff were to pay the Remaining Death Benefit to Williams pursuant to the beneficiary designation, and if Williams is subsequently convicted of the Insured's murder, then plaintiff may face a claim for the

Remaining Death Benefits from Owens and/or Burnside. On the other hand, if plaintiff paid the Remaining Death Benefits to Owens and/or Burnside, and Williams is later acquitted of the Insured's murder, then plaintiff may face a claim from Williams for the Remaining Death Benefits.[3] Thus, plaintiff cannot pay the Remaining Death Benefits without risking multiple liability for their proper distribution.

The Court finds that the record adequately states a claim for relief in interpleader. As the Court found above, plaintiff has likewise met the procedural prerequisites for a default judgment and established jurisdiction of the parties and the subject matter of this case. Thus, a default judgment is appropriate. Having found that a default judgment is proper, the Court must determine what equitable remedies to grant plaintiff.

### 2. *Equitable Remedies*

Plaintiff seeks several different forms of relief in this interpleader action. Plaintiff requests that the Court 1) permit plaintiff to deposit the Remaining Death Benefits, plus any applicable interest, into CRIS; 2) upon such deposit, discharge plaintiff from any and all further liability to defendants for the Plans, the various coverages under the Plans or the Remaining Death Benefits; 3) enjoin defendants from bringing or prosecuting any

---

[3] Even if Williams is acquitted of the Insured's murder, plaintiff may still be subject to a claim by Owens and/or Burnside. For purposes of the slayer statute, the putative beneficiary under the slayer statute need only prove that the named beneficiary caused the death at issue by a preponderance of the evidence. IOWA CODE § 655.536. The acquittal of a beneficiary on charges of murdering the insured is not res judicata as to whether the beneficiary is barred from recovery by a slayer statute. *Taylor v. United States*, 113 F. Supp. 143, 152 (W.D. Ark. 1953), *aff'd sub nom. Taylor v. Taylor*, 211 F.2d 794 (8th Cir. 1954). This is because the standard in a criminal case is proof beyond a reasonable doubt; thus a not guilty verdict does not preclude a finding under the lower "preponderance of the evidence" standard required to prove that a beneficiary intentionally and unjustifiably caused the insured's death. *See* Iowa Code § 633.536 (setting forth preponderance of the evidence standard. *United States v. One 1953 Oldsmobile Sedan*, 132 F. Supp. 14, 19 (W.D. Ark. 1955) (holding that a not guilty verdict under the reasonable doubt standard was not res judicata in a related forfeiture actions under the preponderance of the evidence standard").

claim in state for federal court against plaintiff for the Remaining Death Benefits; 4) order defendants to litigate or otherwise settle and adjust their claims to the Remaining Death Benefits, or failing that, determine the proper recipients of the Remaining Death Benefits on its own; 5) award plaintiff its attorney's fees and costs in their entirety. (Doc. 20, at 5-6).

When a court decides that interpleader is available, a court may provide the stakeholder various types of equitable relief. "Interpleader is an equitable action controlled by equitable principles." *Bauer v. Uniroyal Tire Co.*, 630 F.2d 1287, 1290 (8th Cir. 1980) (quoting *Great American Insurance Co. v. Bank of Bellevue*, 366 F.2d 289, 293 (8th Cir. 1966)). "Once invoked, the scope of a district court's equitable powers is broad, for breadth and flexibility are inherent in equitable remedies." *Brown v. Plata*, 563 U.S. 493, 538 (2011) (alterations, citations, and quotation marks omitted). "While equity is flexible, it is confined within the boundaries of 'traditional equitable relief.'" *In re AFY, Inc.*, 461 B.R. 541, 550 (B.A.P. 8th Cir. 2012) (quoting *Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.,* 527 U.S. 308, 322(1999)).

### *a. Deposit of the Remaining Death Benefits and Discharge of Liability*

Given that this is a rule interpleader, no deposit of funds is required to confer jurisdiction on the Court. *Bauer*, 630 F.2d 1287, 1291 (8th Cir. 1980). Nevertheless, "the general equitable powers of the court permit, if not invite, the court to receive a deposit and thereafter discharge the stakeholder." *Gen. Accident Grp. v. Gagliardi*, 593 F. Supp. 1080, 1087 (D. Conn. 1984), *aff'd sub nom. Gen. Accident Grp. v. Gagliardi*, 767 F.2d 907 (2d Cir. 1985). A court's discharge of the stakeholder should be limited to discharging liability to the funds at issue in the stakeholder's interpleader action. *See e.g.*, *In re Mandalay Shores Co-op. Hous. Ass'n, Inc.*, 21 F.3d 380, 383 (11th Cir. 1994) ("A successful interpleader suit results in the entry of a discharge judgment on behalf of

the stakeholder; once the stakeholder turns the asset over to the registry of the court, all legal obligations to the asset's claimants are satisfied."); *Wells Fargo Bank, N.A. v. ESM Fund I, LP*, 785 F. Supp. 2d 188, 198 (S.D.N.Y. 2011) ("Because the Court has concluded that this interpleader action is appropriate, Wells Fargo is entitled to discharge and protection from further liability arising out of any claims to the funds at issue in this action."), *aff'd sub nom. Wells Fargo Bank, N.A. v. Fin. Sec. Assurance Inc.*, 504 F. App'x 38 (2d Cir. 2012).

Here, the Court finds that the deposit of the Remaining Death Benefits and the discharge of plaintiff's further liability for the Remaining Death Benefits are appropriate remedies. Plaintiff's motion is **granted in part**. Plaintiff is **directed** to deposit the Remaining Death Benefits in the amount of $69,528.00, plus applicable interest, into CRIS within fourteen days of the date of this order. The Clerk of Court is **directed** to place the $69,528.00, plus applicable interest, into CRIS until the Court orders the disbursement of the funds. Upon the Court's receipt of the Remaining Death Benefits and applicable interest, without any further action by the Court, plaintiff will be discharged from any and all liability for payment of the Remaining Death Benefits.

### b. *Injunctive Relief*

Plaintiff requests that the Court enjoin defendants from bringing or prosecuting any claims against plaintiff in state or federal court for the Remaining Death Benefits. Plaintiff cites no authority in support of its request for injunctive relief. (*See* Doc. 13-2, at 8-9). Congress expressly provided for injunctions against further suits in state or federal court in statutory interpleader cases. 28 U.S.C. § 2361. However, "Section 2361 only authorizes injunctions against other judicial proceedings in statutory-interpleader actions; it does not apply to rule interpleader." *Am. Gen. Life Ins. Co. v. Jones*, Civ. Action No. 08-0211-WS-B, 2008 WL 4949847, at *2 (S.D. Ala. Nov. 13, 2008) (quoting 7 Wright, Miller & Kane at § 1717 (3d ed. 2019)). Nevertheless, in a rule interpleader

case a federal court has the power under the All Writs Act, Title 28, United States Code, Section 1651, to enjoin further litigation in federal court for implead funds. *New York Life Ins. Co. v. Bentley*, No. 3:11-CV-00687-M, 2012 WL 12884857, at *2 n.2 (N.D. Tex. Dec. 3, 2012) (citing *New York Life Ins. Co. v. Deshotel*, 142 F.3d 873, 879 (5th Cir. 1998)). On the other hand, it is questionable whether a federal district court can enjoin proceedings in state court for implead funds. *Bos. Old Colony Ins. Co. v. Balbin*, 591 F.2d 1040, 1042 n.5 (5th Cir. 1979); *see also Jones*, 2008 WL 4949847 at *2 ("Simply put, entry of an injunction in the rule interpleader context is at best problematic . . . ."); 7 Wright, Miller & Kane at § 1703 (3d ed. 2019) (noting that there is "sufficient uncertainty" as to a district court's ability to enjoin proceedings in state court in a rule interpleader).

Here, the Court finds that injunctive relief is inappropriate. "An injunction is a drastic and extraordinary remedy, which should not be granted as a matter of course." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165 (2010). To obtain a permanent injunction, the claimant must show "(1) its actual success on the merits; (2) that it faces irreparable harm; (3) that the harm to it outweighs any possible harm to others; and (4) that an injunction serves the public interest." *Cmty. of Christ Copyright Corp. v. Devon Park Restoration Branch of Jesus Christ's Church*, 634 F.3d 1005, 1012 (8th Cir. 2011). Plaintiff has not argued that the factors supporting a permanent injunction are present here. (*See* Doc. 13-2). Moreover, injunctive relief is not necessary to effectuate the Court's Order. The Court's discharge of plaintiff's liability for payment of the Remaining Death Benefits bars any claim by defendants to the Remaining Death Benefits by virtue of res judicata or collateral estoppel. *Jones*, 2008 WL 4949847 at *2 n.4 (citing *Texas v. Florida.*, 306 U.S. 398, 412 (1939)).

Thus, plaintiff's motion is **denied in part** to the extent it seeks an injunction preventing defendants from "instituting or prosecuting any proceeding in any state or United States court affecting the Remaining Death Benefits." (Doc. 20, at 5).

### c. *Ordering Defendants to Litigate or Settle Claims*

Plaintiff further requests that the Court order defendants to litigate or settle their claims to the Remaining Death Benefits and if defendants fail to do so, plaintiff requests that the Court determine to whom the Remaining Death Benefits should be paid. The Court finds that such an order is inappropriate under the circumstances. A civil proceeding to determine if a beneficiary intentionally and unjustifiably caused the death of an insured cannot proceed to trial, and the beneficiary cannot be forced to submit to discovery, until there is a final determination in the criminal proceeding. IOWA CODE § 633.536. Given the ongoing nature of the criminal case against Williams, it would not be appropriate at this time to order defendants to litigate their respective claims when there cannot be a trial and one of the parties cannot be forced to participate in discovery. Nor would it be appropriate for this Court to determine to whom the Remaining Death Benefits should be paid.

Moreover, given that Williams and Burnside are currently in default, it would be inequitable for the Court to order them to litigate their claims to the Remaining Death Benefits. If the Court were to grant plaintiff's requested relief, a failure by Williams or Burnside to file a claim to the Remaining Death Benefits would result in Williams or Burnside's violation of a court order and potentially in contempt of court. This result is inequitable, particularly in light of Williams' incarceration pending his trial. Plaintiff's request that the Court order defendants to litigate or otherwise settle and adjust their claims to the Remaining Death Benefits is **denied**. Defendants may file their claims to the Remaining Death Benefits at any time until twenty-one days after judgment is entered in the pending criminal case against Williams for the Insured's murder.

### d. *Attorney's Fees and Costs*

Finally, plaintiff requests that the Court award "its attorneys' fees and costs in their entirety." (Docs. 13-2, at 9-10; 20, at 6). Plaintiff did not submit an accounting of its attorneys' fees with its motion but offered to do so at the Court's request. (Doc. 13-2, at 10). The Eighth Circuit has long held that in an interpleader action "a completely disinterested stakeholder should not ordinarily be out of pocket for the necessary expenses and attorney's fees incurred by him, [but] the amount allowed for such fees should be modest." *Hunter v. Fed. Life Ins. Co.*, 111 F.2d 551, 557 (8th Cir. 1940). In an interpleader action "[r]ecoverable expenses are properly limited to the attorney fees billed to prepare the complaint, obtain service of process on the claimants to the fund, and secure the plaintiff's discharge from liability and dismissal from the lawsuit." *Dusseldorp v. Ho*, 4 F. Supp. 3d 1069, 1071 (S.D. Iowa 2014). This Court has noted that "[s]ome federal courts have questioned whether attorney fees are appropriate when a stakeholder files an interpleader action to obtain the court's assistance concerning a decision arising in the normal course of business, or otherwise realizes a benefit from the interpleader remedy." *Hearing*, 33 F. Supp. 3d at 1043; *see also Life Ins. Co. of N. Am. v. Eufracio*, 25 F. Supp. 3d 1179, 1182-85 (N.D. Iowa 2014). Similarly, this Court disfavors claims for fees and costs that seriously deplete the fund when the interpleader benefits the plaintiff and the costs incurred are the general cost of doing business. *Eufracio*, 25 F. Supp. 3d 1179, 1182.

Given that the Court has not received an accounting of plaintiff's attorneys' fees and costs, the Court cannot grant plaintiff's request for fees and costs in their entirety. The Court's ruling on plaintiff's request for attorneys' fees and expenses is **held in abeyance**. Plaintiff may file a detailed accounting of its attorneys' fees and costs within fourteen days of this order. Defendants may file any objections to plaintiff's accounting within fourteen days of plaintiff's filing of its accounting.

## IV. CONCLUSION

For the reasons stated above, the Court hereby orders:

1. Plaintiff's Unopposed Motion for Default Judgment and other Interpleader Relief (Doc. 13) is **granted in part**. Plaintiff is **directed** to deposit into CRIS the Remaining Death Benefits in the amount of $69,528.00, plus applicable interest. The Clerk of Court is **directed** to place the $69,528.00, plus applicable interest, received from plaintiff into CRIS until the Court orders the disbursement of the funds. Upon the Clerk of Court's receipt of the Remaining Death Benefits and applicable interest plaintiff will be discharged from any and all liability for the Remaining Death Benefits.

2. Plaintiff's Unopposed Motion for Default Judgment and other Interpleader Relief is **denied** to the extent it seeks an injunction preventing defendants from instituting or prosecuting any proceeding in any state or United States court affecting the Remaining Death Benefits, and to the extent it seeks an order requiring defendants to litigate or otherwise settle their respective claims to the Remaining Death Benefits. Defendants may assert any claims to the Remaining Death Benefits until twenty-one days after judgment is entered in *State v. Williams*, Black Hawk County Case No. FECR 229282.

3. The Court **holds in abeyance** its ruling on Plaintiff's Unopposed Motion for Default Judgment and other Interpleader Relief to the extent it seeks an award of attorneys' fees. Plaintiff may file a detailed accounting of its attorneys' fees and costs within fourteen days of this order. Defendants may file any objections to plaintiff's accounting within fourteen days of plaintiff's filing of its accounting.

**IT IS SO ORDERED** this 30th day of July, 2019.

_____
C.J. Williams
United States District Judge
Northern District of Iowa